THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TIMOTHY LEWIS *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 1—90—0405, 1—90—0832 cons.

Opinion filed March 12, 1993.

Rita A. Fry, Public Defender, of Chicago (Timothy J. Leeming, Assistant Public Defender, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Sari London, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Following a jury trial, defendants Timothy Lewis, Demetrius Lee, and Isiah Bell were found guilty of first-degree murder and three counts of attempted first-degree murder. Defendants Lewis and Lee were sentenced to 50 years in the Illinois Department of Corrections for the murder of Terrance Greenfield, 30 years to run consecutively for the attempted murder of Hubert Brownlee, and 30 years to run concurrently for the attempted murders of Chicago police officers Wallace Braswell and Martha DePriest. Defendant Bell received a 60-year sentence for the murder, and two 30-year sentences (one consecutive and one concurrent) for the attempted murders. On appeal, defendants raise a number of issues concerning their convictions: (1) all three defendants maintain that the trial judge abused his discretion in imposing consecutive sentences; (2) defendants Lewis and Bell contend that they did not receive a fair trial because the trial court improperly denied their motions for severance; (3) defendants Lewis, Lee and Bell argue that they did not receive a fair trial because evidence of other crimes was improperly admitted; (4) defendant Lewis (alone) maintains that he was not found guilty beyond a reasonable doubt of the attempted murders of police officers DePriest and Braswell, and also that he was denied a fair trial because of improper prosecutorial remarks; (5) defendant Lee (alone) argues that he was denied a fair trial because of prosecutorial misstatement of the evidence during opening remarks; and (6) defendant Bell (alone) in his *pro se* brief urges that the trial court erred in finding his conduct to be exceptionally brutal and heinous and that the sentence he received was excessive.

The charges against defendants Lewis, Lee and Bell stem from two separate shooting incidents which occurred on the evening of

March 18, 1988. The first incident (which resulted in murder and attempted murder charges) involved shots fired from the window of a Chevrolet automobile at a group of men who were standing outside an abandoned gas station. As a result of the shooting, which involved both a .45-caliber pistol and a semi-automatic weapon, Terrance Greenfield was killed and Hubert Brownlee was wounded. The testimony adduced at trial regarding this incident includes the following relevant facts. At trial, Michael Lyles testified that on March 18, he was with seven or eight men, including David Hemphill, Terrance Greenfield and Hubert Brownlee, in the area of 16th and Springfield, Chicago, Illinois, near an abandoned gas station. Lyles saw a "brown Chevy" (carrying three people) pull up, heard someone shout "Look out," then heard 10 shots being fired, and finally saw that Brownlee and Greenfield had been shot and that Greenfield was lying on the ground. Lyles was unable to identify anyone who had been in the car. Hemphill testified to essentially the same facts, but added that others including Lattice Bass and Pierre Mahoney were also initially present at the corner, but had left by the time the "brown Chevy" with two people in the front seat and one person "crouched" down in the back seat drove up. Hemphill identified defendant Lewis as being in the front seat of the car, hanging out the window with a gun in his hand. Lewis had asked, "Where's Baby at?" (It was later established that "Baby" referred to Lattice Bass.) Hemphill also testified that he saw defendant Bell rise from the back seat with an object in his hand. He then heard gunshots and saw Greenfield on the ground bleeding from his head. John Hamilton (who changed his name before trial to Azey Hammad) testified that he was also present at the gas station on the evening of March 18. He observed the Chevrolet drive by two times and was able to identify defendants Lewis, Lee and Bell as the occupants of the automobile. Hamilton also noted that Lee was driving, Lewis was in the front passenger seat with an automatic pistol in his hand, and that Bell was in the back seat and had a weapon. (At the time he testified, Hamilton was facing two felony charges.) Brownlee also testified about the shooting at the gas station. He stated that he was at the 16th and Springfield location when defendants drove up. He identified Lewis as holding a hand pistol and Bell as having an Uzi. When the shooting started, he began to run, was shot in the shoulder blades, and observed Greenfield, who was shot in the head, lying on the ground. Chicago police officer Dwayne Johnson testified that he and his partner were on patrol near the gas station, heard the gun shots, and were given a description of the Chevrolet from which the shots were fired.

The second shooting incident (which resulted in two attempted murder charges) took place later in the evening of March 18, 1988, and involved the same defendants and two Chicago police officers (Martha DePriest and Wallace Braswell, Jr.) who were attempting to apprehend Lewis, Lee, and Bell. At trial, Officers DePriest and Braswell testified that they were working when they heard a radio flash message that there was gunfire in the vicinity of 16th and Springfield. Shortly thereafter, while stopped at the intersection of Roosevelt Road and Independence Boulevard, they saw an orange-with-white-top Chevrolet with two people in the front seat, which matched the description of the vehicle in question. A chase ensued, ending when the Chevrolet struck a billboard and came to a stop. As the officers approached the car, the passenger door swung open and shots were fired. The officers returned fire, and the car pulled away. Another chase occurred, terminating when the offenders crashed into some parked cars. When the officers approached, no one was in the car, but an automatic weapon was recovered. Shortly thereafter, defendants Lee and Bell were apprehended. (Lee was spotted hiding behind a tree, and Bell was seen running away from the crash and hiding in a basement stairwell.)

A third criminal incident involving Lewis, Lee, and Bell also occurred on the evening of March 18, about an hour and a half prior to the gas station shooting. Although no criminal charges resulted from this incident, evidence regarding it was introduced at trial. Lattice Bass testified that at approximately 9 p.m., defendants (who were in a gold Chevrolet) approached his car and told him to roll the window down. Then Bell took out a pistol and ordered Bass out of his car. Lewis and Lee were also present when Bell demanded money from Bass. When Bass did not do as he was told, Bell pointed the gun at his leg, but it misfired. Then Bell put the gun to Bass' head, but apparently did not shoot. The men dispersed, but Bass testified that later he saw the defendants in a different car and that they shot out the window on the driver's side of his car.

■ On appeal all three defendants argue that the trial court abused its discretion in imposing consecutive sentences where the court did not find and the record does not reflect that consecutive sentences are necessary to protect the public. Assuming, *arguendo*, that this issue has not been waived for review, the State argues, and we agree, that the trial court properly sentenced defendants to consecutive terms for the offenses of murder and attempted murder. The statute regarding consecutive sentencing states in relevant part:

"The court shall not impose a consecutive sentence *** unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(b).)

The statutory requirement that the court shall set forth in the record the basis for the court's determination that consecutive sentences are "required to protect the public from further criminal conduct by the defendant" has been found to be permissive rather than mandatory. (*People v. Hicks* (1984), 101 Ill. 2d 366, 462 N.E.2d 473.) Although it has been found to be a better practice to state that opinion in the language of the statute, the failure to do so does not require reversal. (*People v. Pittman* (1982), 93 Ill. 2d 169, 442 N.E.2d 836.) As long as the record supports the determination of the sentencing court, the reviewing court will not substitute its own judgment, even if it would have balanced the factors differently. *Pittman*, 93 Ill. 2d 169, 442 N.E.2d 836.

In the case at bar, the record clearly demonstrates that the trial court was of the opinion that consecutive sentences were necessary to protect the public. It heard arguments in aggravation including details of the prior armed robbery of Lattice Bass. It also considered how, after one person was shot and another wounded, defendants opened fire while fleeing police officers. The court also considered in mitigation the following factors: (1) defendant Bell's childhood, the fact that there was no man around the house, and the fact that he helped his mother, grandmother, and certain brothers and sisters; (2) the hardship to defendant Lewis' dependents; and (3) that defendant Lee insisted that he was not guilty, that if he was present he was only the driver, that he got along with his family, that he had finished high school and that although he was less culpable than the others who had done the shooting, he had a more extensive background and record. Thus, the record and the trial judge's remarks support a determination that it was necessary to protect the public from defendants Lewis, Bell and Lee. Accordingly, defendants' argument that the consecutive sentences were an abuse of discretion is without merit.

We address the remaining arguments as they pertain to each defendant.

## I. DEFENDANT TIMOTHY LEWIS

■ Initially, defendant Lewis maintains that he was prejudiced by the trial judge's denial of his motion to sever his trial from that of codefendants Lee and Bell. Defendant admits that the general rule regarding codefendants is that defendants who are jointly indicted are to be jointly tried unless a separate trial is necessary to avoid prejudice to one of the defendants. (*People v. Thomas* (1987), 116 Ill. 2d 290, 507 N.E. 2d 843.) In fact, in seeking a separate trial, a defendant must "actively and specifically point out the antagonism of the defenses [between himself and the codefendants] and therby demonstrate the prejudice which will be suffered from a joint trial." (*People v. Wolfe* (1986), 144 Ill. App. 3d 843, 849, 494 N.E. 2d 670, 674.) Furthermore, the decision of whether to grant a separate trial is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. (*People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461.) Lewis argues that the joint trial prejudiced him as follows: the trial judge included a jury instruction which drew attention to the fact that Lewis did not testify on his own behalf; the guilt of the codefendants (in the two charged incidents) was established by disproportionately more evidence; and, finally, that the guilt of the codefendants in the Lattice Bass shooting was established by disproportionately more evidence.

The objected-to jury instruction was: "The fact that the defendants did not testify should not be considered by you in any way in arriving at your verdict." Defendant Lewis maintains that this instruction, included because of the request of codefendant Lee, called even greater attention to the fact that defendants did not testify and therefore prejudiced him. Defendant Lewis does not cite any case law to support the proposition that such an instruction prejudiced him. Neither does he explain how prejudice resulted from such an instruction. The fact that Lewis did not request this instruction does not reflect any discrepancy between defenses and certainly does not rise to the level of an antagonistic defense. Furthermore, case law supports the proposition that such an instruction, when requested by another non-testifying codefendant, is not *per se* prejudicial. *People v. Brooks* (1984), 124 Ill. App. 3d 222, 463 N.E. 2d 1326.

Defendant Lewis also argues that he was prejudiced by a joint trial because the evidence of the codefendants' guilt was established by disproportionately more convincing evidence. Assuming, *arguendo*, that this claim has not been waived by defendant's failure to raise it in his motion to sever or in his post-trial motion, we find that it has little merit. To rebut the evidence in favor of joint trials with a claim

of disparate evidence, a defendant must show not only that there is a "gross disparity in the quantity and venality of the testimony against the respective joint defendants" but that as a result the jury cannot "reasonably be expected to compartmentalize the evidence as it relates to separate defendants." (*People v. Byron* (1987), 116 Ill. 2d 81, 93, 506 N.E. 2d 1247, 1252.) Defendant has not demonstrated that the type or volume of evidence established at trial was such that the jurors could not reasonably be expected to compartmentalize it as it related to the separate defendants. In fact, most of the evidence at trial was admissible against all three defendants. Lewis was identified by three eyewitnesses, although he contends that such testimony was dubious as each was facing simultaneous felony charges. (However, the same witnesses also testified against the codefendants.) Furthermore, Lewis was identified as having a gun in his hand, and of asking, "Where's Baby at?" (Lattice Bass) before the shooting began. Thus there was substantial evidence of Lewis' involvement in the crimes. The only evidence which did not apply to Lewis was the fingerprint evidence. However, the jury was instructed that fingerprint evidence applied to defendant Lee only. Moreover, the jury was instructed that only defendants Lee and Bell were arrested near the scene, and it was instructed to give separate consideration to each defendant. Based on the foregoing, we cannot conclude that the evidence against codefendants Lee and Bell was so much greater than that against Lewis as to deny defendant Lewis a fair trial.

Lewis' claim that the evidence of the prior incident with Lattice Bass was also disproportionate is also without merit. At trial Bass testified that Lewis was involved in the armed robbery and shooting which occurred prior to the fatal shooting of Greenfield. He identified Lewis as being present in the Chevrolet and later in the gangway when he was robbed at gunpoint. Even though Bass testified that Lewis looked surprised when Bell demanded that he "move on those bitches," Lewis was nevertheless an active participant in the robbery which occurred. Bass also identified Lewis as being in the car with Bell and Lee when the shooting occurred. Considering these facts, any claim of disparity must fail on the merits.

■ Lewis also maintains that he was denied a fair trial because the "other crimes" evidence (against Lattice Bass) was improperly admitted. Although it is well established that evidence of other criminal activity may not be admitted simply to establish a defendant's propensity to commit crime, other crimes evidence is admissible to prove *modus operandi*, intent, identity, motive, or absence of mistake. (*People v. Hayes* (1990), 139 Ill. 2d 89, 564 N.E.2d 803.) Evidence of other

crimes can be admissible if it is intertwined with the instant offense or where it relates to the events which occurred earlier in the evening which led to the charged offense. (*People v. Garrison* (1986), 146 Ill. App. 3d 592, 496 N.E.2d 535.) It is also relevant in placing a defendant in proximity to the time and place of the offense or to rebut a defendant's alibi. (*People v. Lee* (1986), 151 Ill. App. 3d 510, 502 N.E.2d 399.) In the instant action, the evidence of the prior armed robbery and shooting of Bass was relevant to prove motive and identity of defendants, and places defendants with guns at the time and place charged. The facts established that, just prior to the gas station shooting, Lewis had asked, "Where's Baby at?" referring to Lattice Bass and implying that the men in the car had not finished the job they started earlier that evening and, in fact, were still looking for the same victim. Furthermore, the testimony of Bass was relevant to corroborate Lewis' identity. At trial Lewis presented an alibi defense and claimed that the eyewitness testimony placing him at the crime scene was "dubious." Additionally, any prejudicial effect the "other crimes" evidence may have had is minimal and is outweighed by its probative value, as the trial court instructed the jury that such evidence was to be considered solely on the issue of defendants' identity, presence, and motive.

■■ Defendant Lewis also argues that he was not proven guilty beyond a reasonable doubt of the attempted murder of Officers De-Priest and Braswell. As support for this argument, he claims that there was no evidence that he was in the car at the time of the shooting and he was not arrested at the scene, as were his two codefendants. However, as the State points out, defendant was identified by three eyewitnesses as being in the front passenger seat of the car and firing a gun just minutes before the shooting at the officers began. When the sufficiency of the evidence is challenged on appeal, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all elements of the offense proved beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453.) A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) In the case at bar, it is entirely proper for the trier of fact to make the inference that the same three men were in the same car when the second shooting occurred. Officers DePriest and Braswell testified that they had heard the flash message describing the Chevrolet at the gas station shooting, and then intercepted a vehicle matching its description. Even

though Lewis was not apprehended at the scene, the jury is still entitled to believe that he was in the car and participated in the shooting of the policemen. In the absence of any gross disparity in the evidence, this court will not substitute its judgment for that of the jury, which not only heard the relevant testimonies, but observed the demeanor of the witnesses.

■ Defendant Lewis finally argues that he did not receive a fair trial because of improper prosecutorial remarks made during closing arguments. In closing, the defense attorney argued Lewis' alibi theory, that he was with friends and family on Friday night when the crime was committed. In response, the prosecutor asked, "Where are all the buddies?" While, generally, it is improper to comment on a defendant's failure to produce witnesses, once a defendant injects into his case his activities with potential witnesses for the purposes of establishing an alibi, his failure to produce such witnesses is a proper subject for comment on the part of the State. (*People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247.) Even if such comment was improper, the evidence against defendant Lewis was so overwhelming that any error would be harmless.

## II. DEFENDANT DEMETRIUS LEE

■ On appeal, defendant Lee argues that he was denied a fair trial on the current charges, by the admission of evidence that he had participated in an entirely separate armed robbery and attempted murder (the Lattice Bass testimony), where such evidence was not probative of any issue at trial, other than his propensity to commit criminal acts. As discussed above, with respect to defendant Lewis, the Lattice Bass incident was extremely relevant to the case at bar, as it established that the same three defendants were together earlier that evening, were in the same car, and had possession of a gun. This incident was directly connected to the gas station shooting, as defendants indicated that they were still looking for Bass when they pulled up at the station (Lewis' question, "Where's Baby at?"). Thus, as the trial court found, the Bass testimony was relevant to establish motive. Furthermore, as the trial court also found, the Bass testimony was also relevant to establish defendant Lee's identity. Even though Lee's identity had been established by eyewitness testimony (Hamilton and Brownlee), Lee questioned this testimony and presented an alibi witness (Joanne Col), thus making his identity an issue which the Bass testimony properly addressed. Furthermore, as noted in our discussion above, any prejudicial effect of the other crimes testimony was minimized by the trial judge's instruction to the jury that such evi-

dence be considered only for the limited issue of defendants' identity, presence, and motive.

■■ Defendant Lee also argues that he was denied a fair trial by the prosecutor's misstatement of the evidence during opening remarks. Although no objection was made at trial, Lee now notes that in opening, the prosecutor stated that police officers saw someone with a limp run away from the car involved in the crime and that Lee was limping shortly thereafter when arrested. However, at trial, the State offered only testimony that Lee was limping at the time of his arrest, but failed to offer the promised testimony that someone with a limp was also seen fleeing the scene of the shooting. The closest the State came to establishing that someone with a limp left the scene of the crash was the testimony of Officers Rawski and Grapenthien, who testified at trial that they heard a police radio report of a person with a limp fleeing from the car. Defendant argues that such testimony constituted inadmissible hearsay. Again, no objection was made to this evidence at trial. Defendant also argues that the prosecutor compounded the error by arguing to the jury in closing that based on the broadcast, Lee's limp identified him as just having run away from the car. Again, no objection was made to these remarks at trial.

The law is well settled that the failure to object at trial to the admissibility of evidence and the failure to complain of the alleged error in a post-trial motion results in waiver of the issue for purposes of appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124; see also 107 Ill. 2d R. 366(b)(2)(iii).) The only exception to the waiver rule is where the complained-of error constitutes plain error. (*Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.) The plain error rule permits a reviewing court to consider a trial error not properly preserved for review when either the evidence in the case is closely balanced or where the evidence is so fundamental and of such magnitude that defendant was denied a fair trial. In the case at bar, the evidence was not closely balanced as defendant's fingerprints were found in the car, he was identified by three eyewitnesses, and arrested near the scene. Assuming, *arguendo*, that any error did occur in the admission of the complained-of testimony, such error would not be of sufficient magnitude to deprive defendant of a fair trial. Furthermore, we cannot agree with defendant that the failure of his counsel to object to the radio broadcast testimony regarding his limp (or the prosecutor's reference to such testimony in opening and closing arguments) constituted ineffective assistance of counsel. In order for defendant to prove ineffective assistance of counsel, he must show that counsel's representation fell below an objective standard of reasonableness and that, but for

defense counsel's alleged errors, the outcome of the proceedings would have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) In reviewing the record as a whole, it is clear the defense counsel made various motions, strong arguments, and timely objections on his client's behalf. Defense counsel therefore provided representation which was well within the range of reasonable assistance and did not deny defendant effective assistance of counsel.

## III. ISIAH BELL

On appeal defendant Bell (like defendant Lewis) argues that he was prejudiced by the trial court's refusal to sever his trial from that of the codefendants. Again we note the general propositions of law (mentioned above in our discussion of Lewis' argument) that defendants who are jointly indicted are to be jointly tried unless they are able to demonstrate the antagonism or hostility of defenses between themselves and their codefendants, as well as the prejudice which would result from a joint trial. Defendant Bell urges this court to consider that he was prejudiced by a joint trial in the following ways: by the admission of a prior consistent statement by eyewitness David Hemphill; his codefendants struck jurors he would have chosen; and by codefendants' focusing on his conduct during the cross-examination of Lattice Bass. In addition to these arguments, which were presented on behalf of Bell by the public defender, Bell has filed his own *pro se* brief in which he argues that the trial court erred in finding that his conduct was exceptionally brutal or heinous therefore justifying an extended sentence, and also that the section of the Unified Code of Corrections which provides for an extended sentence based on "exceptionally brutal or heinous behavior indicative of wanton cruelty" is unconstitutionally vague.

Initially, Bell maintains that he was prejudiced by the admission of a "bolstering" prior consistent statement of eyewitness David Hemphill. At trial, Hemphill testified that Bell was in the Chevrolet from which the shots were fired near the gas station. On cross-examination by Bell's attorney, an inference of recent fabrication regarding Hemphill's testimony was established, thus permitting the introduction of Hemphill's prior consistent statement. Bell argues that his own trial strategy did not include this cross-examination and, consequently, would not have involved the bolstering consistent statement which he claims is prejudicial. Assuming, *arguendo*, that this issue has been preserved for review (Bell did not object at trial), Bell has not demonstrated how this otherwise properly admitted testimony has prejudiced his case or how it indicates hostility between defendants or an-

tagonistic defenses. He has therefore not established that he was entitled to a separate trial based on these grounds.

Bell next maintains that he was prejudiced by the joint trial because it denied him the opportunity to select his own jury. He further argues that counsel for his codefendants struck jurors whom he would have chosen. Case law supports the State's argument that the right to a fair and impartial jury does not translate to a right to have a particular individual included on the panel. (*People v. Edwards* (1988), 167 Ill. App. 3d 324, 521 N.E.2d 185.) Moreover, Bell has not demonstrated how he was prejudiced by the exclusion of any particular jurors at trial.

Bell also argues that the joint trial prejudiced him because counsel for Lee blamed Bell for the assault and robbery of Lattice Bass. We cannot agree. We have already determined the propriety of admitting the evidence regarding the assault and robbery of Lattice Bass, as it established both motive for the later shooting and identity of the defendants. In his testimony regarding this incident, Bass stated that a group of men including Bell shot at his car, that Bell (and Spears, who is not a defendant in this case) demanded money, that Bell stated that "he was fed up with this shit," and that Bell held a gun and ordered the others to rob him. Bass further testified that Bell tried to shoot him in the leg, but his gun misfired. The cross-examination complained of by Bell merely emphasized that defendant Lee did not have a gun and that both Lee and Lewis looked surprised at Bell's conduct. In light of the testimony given by Bass, himself, we fail to see how any of the comments made during cross-examination may have unfairly prejudiced Bell.

■ In his *pro se* brief, Bell raises several issues regarding the propriety of his sentence. (Bell received 60 years for murder, 30 years for attempted murder to run consecutively, and 30 years for attempted murder to run concurrently. His two codefendants received terms of 50 years for murder, 30 years for attempted murder to run consecutively, and 30 years for attempted murder to run concurrently.) Bell first maintains that the trial judge erred in imposing an extended sentence. Applicable statutory authority does allow for an extended sentence when a defendant is guilty of exceptionally brutal or heinous behaviour indicative of wanton cruelty. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(2).) However, in the case at bar, the trial judge did not impose an extended sentence, but did impose the maximum sentence for the crime of murder. The sentencing statute provides that for murder, a term shall be not less than 20 years, and not more than 60 years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1.)

Therefore, the sentence issued to Bell does not involve the extended sentencing provisions, and consequently, we do not consider Bell's arguments that such provisions are unconstitutional. Bell also contends that 60 years and 30 years to run consecutively is excessive. Well-settled case law holds that a trial judge is accorded broad discretion in the sentencing phase of a trial, in order to permit a reasoned judgment concerning the particular circumstances of each case. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E. 2d 344.) In sentencing Bell to 10 years more than the other defendants, the trial judge considered all factors in aggravation and mitigation, including Bell's criminal record, which was as bad as the others, as well as the fact that Bell was identified as firing at with a semi-automatic weapon no fewer than three and as many as five or more victims in this case. Considering that record, we cannot say that Bell's sentence was excessive or an abuse of the trial judge's discretion.

For the above-mentioned reasons, the judgment of the circuit court is affirmed.

Affirmed.

GORDON, P.J., and COUSINS, J., concur.