FIRST DIVISION

April 26, 1999

No. 1-97-1448

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

DENNIS JACKSON,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Frank DeBoni,

Judge Presiding.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

A jury convicted defendant, Dennis Jackson, of armed robbery (720 ILCS 5/18-2 (West 1994)), first degree murder (720 ILCS 5/9-1 (West 1994)) and felony murder (720 ILCS 5/9-1(a)(3) (West 1994)) in connection with the stabbing death of the victim, Kenneth Posey.  Although defendant was found eligible for the death penalty, the court sentenced defendant to a term of natural life imprisonment for the first degree murder, with a concurrent term of 30 years' imprisonment for the armed robbery.  Defendant appeals, arguing the trial court erred by: (1) failing to properly instruct the jury; (2) admitting evidence of the deceased's peaceful character; (3) admitting testimony implying that defendant had prior arrests; (4) admitting evidence of uncharged crimes; and (5) imposing an unlawful sentence.   We affirm.

Tena Ware, the victim's sister, testified that on October 29, 1994, at 9:30 a.m., she entered Posey's house and found him lying motionless in the hallway with a knife sticking out of his leg.  She also noticed his Chevy Lumina was missing and immediately called the police.

Detective Luis Disotaur testified that he arrived at the crime scene at approximately 11 a.m. on October 29, 1994.  Disotaur testified that he saw blood on the kitchen floor and a trail of blood leading to Posey's body lying in the hallway.  He observed a brown wallet on the kitchen floor with its contents strewn about.

Detective Disotaur further testified that on December 20, 1994, the Cook County crime lab informed him that six fingerprints lifted from the crime scene matched defendant's fingerprints.  On January 11, 1995, he met defendant at his home in Riverdale.  Disotaur determined that defendant was about 5 feet 8 inches and 180 pounds.  Disotaur told defendant he was investigating the murder of Kenneth Posey.  Defendant agreed to go to the Riverdale police station.  At the Riverdale police station, Disotaur read defendant his 
Miranda
 rights and defendant told him that at approximately 3 p.m. on October 28, 1994, he was walking near North Avenue and Austin Boulevard.  Posey drove up, offered him a ride and defendant got in the car.  They drove to a liquor store and then they drove to Posey's house in Bellwood.   Posey then loaned defendant the car so that he could drive back to the southern suburbs.   Defendant stated he did not kill Posey.   

Disotaur testified that after defendant's statement, he brought defendant to the Bellwood police station and again advised him of his 
Miranda
 rights.  Defendant again told Disotaur that Posey had picked him up near North Avenue and Austin Boulevard.  Defendant said he did not know Posey prior to accepting the ride with him, but that he suspected Posey was gay.  Defendant told Disotaur that he "didn't like gay people *** they just disgusted him."  Defendant stated he accepted the ride with Posey because he thought he "could get something" from him.  

They stopped at a liquor store, where Posey bought liquor, and then they drove to Posey's house in Bellwood.  Three or four men were already at the house; defendant believed they were all gay because they kept referring to a predominantly gay bar in Forest Park.   As defendant drank with the men in the basement of the house, they asked him if he wanted to go to the bar.  Defendant declined, telling them he had a long way to go home.

Posey and the other men walked upstairs, leaving defendant alone in the basement.  Defendant became angry because he thought  Posey was "trying to be slick to get rid of the other guys" so he could have "some type of a sexual moment" with defendant.  Posey returned to the basement and told defendant he had something to show him upstairs.  Defendant followed Posey upstairs and noted that the other men were gone.  The phone rang and Posey talked for a minute on the phone, hung up, then placed another call.   Defendant heard Posey make plans to meet the person on the other end of the line later.  Posey then hung up the phone and stepped into the hallway.

Defendant walked toward Posey, who was standing in the hallway outside his bedroom.  When defendant approached, Posey reached out  and touched defendant on the pants in the area of his penis.  Defendant told Posey "not to do that."  Posey then tried to kiss defendant on the mouth.  Defendant became angry, cursed Posey, and punched Posey in the face three times.  

Defendant then started to walk back towards the kitchen.  Posey came up behind him and "got his hands around [defendant's] neck."  Defendant broke free, grabbed a butcher knife from the kitchen counter, turned around and stabbed Posey in the chest.  As defendant stabbed him, Posey said "Why are you doing me this way?"

Defendant pulled the knife out of Posey's chest, after which Posey fell facedown in the hallway.  Defendant was angry and wanted to make sure that Posey would not move, so he stabbed Posey in the left thigh.  He removed the watch, bracelet, and ring from Posey's body, then looked through Posey's wallet, which contained no money.   Defendant took Posey's car keys and stole Posey's car.  Before leaving, he grabbed Posey by the legs and dragged him farther into the house "so he wouldn't be seen."  Defendant then drove to Ford Heights, where he sold the bracelet, ring, and wrist watch. 

Following defendant's statement, Detective Disotaur met with Assistant State's Attorney Andrea Grogan, who testified that at approximately 8:40 p.m. on January 11, 1995, defendant made a written statement substantially similar to the oral statement recited above.  Grogan further testified that defendant never claimed he was in fear of being killed or suffering bodily harm as the  result of Kenneth Posey's conduct.  Also, defendant indicated that Kenneth Posey never had any weapons in his hands and never hurt defendant during this incident.  Defendant stated he rented Kenneth's car to four men for $75 and sold Kenneth's watch, ring and bracelet for $50 within two to three hours after leaving Kenneth's home.

Bernard Estes testified that on October 29, 1994, at midnight or 1 a.m., he was with friends Barry Watson and Clarence Brown in Ford Heights. He observed a white Chevy Lumina park near him, and defendant and another individual exited the vehicle. Defendant told Estes his name was "Kenny" or "Kenneth" and asked Estes and his friend if they wanted to rent the car for a few hours. Barry Watson agreed to rent the car and paid defendant $50. Defendant further stated that he wanted to sell a bracelet and ring. Estes bought both items for $50. Estes also noticed that the insurance card in the glove compartment of the Chevy Lumina contained the name "Kenneth." 

Barry Watson testified that when he was with his friends Clarence Brown and Bernard Estes on October 29, 1994, he rented a Chevy Lumina from defendant. Watson paid defendant $50 for the car. The next day Watson was arrested while he was in the Chevy Lumina and taken to the Bellwood police station.

Doctor Adrienne Segovia testified that on October 30, 1994, she performed the autopsy on Posey's body.  Her examination revealed that Posey was a 6-foot-2-inch male who weighed 161 pounds. Posey had a single horizontal stab wound to the chest, two additional stab wounds on the left thigh, and a defensive cut on the right hand.  In Doctor Segovia's opinion, Posey died from multiple stab wounds, and post-mortem tests on Posey's blood, urine and bile showed alcohol levels from .24 to .28. 

The jury convicted defendant of murder, felony murder, and armed robbery.  The trial court sentenced defendant to a term of natural life imprisonment for murder with a concurrent term of 30 years' imprisonment for the armed robbery conviction.  Defendant filed this appeal.

First, we address whether defendant's murder convictions must be reversed due to the trial court's failure to properly instruct the jury.  The trial court instructed the jury on self-defense in that defendant was justified in the use of deadly force if he reasonably believed such force was necessary to prevent imminent death or great bodily harm.  Defendant, however, argues the trial court erred by refusing to give the additional instruction on the justifiable use of deadly force to prevent the forcible felony of criminal sexual assault.

 That instruction is based on section 7-1 of the Criminal Code of 1961 (the Code) (720 ILCS 5/7-1 (West 1994)), which provides that a person is justified in the use of deadly force only if he reasonably believes such force is necessary to prevent the commission of a forcible felony.  The definition of "forcible felony" includes criminal sexual assault.  720 ILCS 5/2-8 (West 1994).  Criminal sexual assault is defined as "an act of sexual penetration by the use of force or threat of force."  720 ILCS 5/12-13(a)(1) (West 1994).

     Section 7-1 of the Criminal Code also provides that a person is justified in using deadly force "only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another." 720 ILCS 5/7-1 (West 1996).  The jury received the following instruction based on that section of the Code:  

"A person is justified in the use of force when and to 

the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which 

is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself." Illinois Pattern Jury Instructions, Criminal, No. 24-25.06 (3d ed. 1992).

A defendant is entitled to have the jury instructed on any legally recognized defense theory that has some foundation in the evidence. 
People v. Yarbrough
, 269 Ill. App. 3d 96, 100, 645 N.E.2d 423 (1994). The trial court's refusal to issue a specific jury instruction is reviewed under an abuse of discretion standard. 
People v. Kidd
, 295 Ill. App. 3d 160, 167, 692 N.E.2d 455 (1998). The issue here is whether the record contains some foundation in the evidence supporting defendant's theory that he killed Kenneth Posey because he reasonably believed such force was necessary to prevent Posey from committing an act of forced sexual penetration on him, thereby requiring the jury to be given the prevention of forcible felony instruction. 
People v. Everrett
, 141 Ill. 2d 147, 157, 565 N.E.2d 1295 (1991). 

Defendant's oral and written statements describe defendant's version of what happened between the defendant and the victim. Defendant did not testify at trial.  Defendant told Disotaur that Posey picked him up at North Avenue and Austin Boulevard and drove him to Posey's home.  Defendant suspected Posey was a homosexual and he went with Posey because he thought he could get "something" from him. Immediately preceding the killing, Posey touched defendant on the pants in the area of the penis.  Defendant told Posey "not to do that."  Posey then attempted to kiss defendant on the mouth, but was unsuccessful.  At this point, defendant stated in his own words that he became angry with Posey. Defendant did not express any fear of bodily harm or forced sexual penetration.

In fact, after the attempted kiss, defendant punched Posey three times in the face and cursed him. Defendant then began to walk away from Posey, further evidencing no fear of sexual assault.  After defendant punched Posey three times in the face and began to walk away, Posey grabbed the defendant from behind in the neck area and defendant broke free from the victim. Rather than leaving Posey's house, defendant grabbed a knife and stabbed Posey in the chest.  

Defendant then pulled the knife out of Posey's chest, after which Posey fell facedown in the hallway.  Defendant stated he was angry and wanted to make sure that Posey would not move, so he stabbed Posey in the left thigh.  Defendant went downstairs, retrieved his coat, and walked back upstairs in order to remove the watch, bracelet, and ring from Posey's body.  He looked through Posey's wallet, which contained no money.  He moved Posey's body farther into the house so he would not be seen.  Defendant then stole Posey's car, drove to Ford Heights and sold Posey's jewelry.

Defendant contends that sufficient evidence existed to require that the jury receive the prevention-of-forcible-felony instruction in support of his theory that he used deadly force to prevent Posey from sexually assaulting him. We disagree.  Whether such an instruction is warranted depends on the facts and circumstances of each case.  
People v. DiVincenzo
, 183 Ill. 2d 239, 251, 700 N.E.2d 981 (1998).  The victim's touching of defendant's pants in the penis area and single attempt to kiss defendant are not sufficient evidence to require that the jury be given the prevention-of- forcible-felony instruction. Defendant's own statement indicates that he acted in a forceful, aggressive manner.  Defendant stated that he was walking toward the victim when the victim reached out and touched defendant's clothing in the area of his penis. Next, the victim tried to kiss defendant, but defendant easily prevented the kiss.  A brief touching of defendant's pants in the penis area and a rebuffed attempted kiss do not constitute evidence of a criminal sexual assault.  

Criminal sexual assault is defined as "an act of sexual penetration by the use of force or threat of force."  720 ILCS 5/12-13(a)(1) (West 1994).  No force or threat of force accompanied the touching of defendant's pants in the penis area and the attempted kiss by the victim.  There is no evidence of sexual penetration or attempted sexual penetration.  It is undisputed that the victim made no threatening remarks to defendant; it is undisputed the victim was not armed at any time; and it is undisputed the victim never threatened or harmed the defendant.  The first person to use force was the defendant, who punched the victim in the face three times after rebuffing the attempted kiss. 

     Moreover, it should be noted that as a result of the victim's conduct, defendant in his own words became, not frightened, but angry, called the victim a name, and punched the victim three times in the face.  Defendant's theory that he reasonably believed that he would be sexually assaulted is not supported by the evidence and defies any logical inference from the evidence.  Based on the facts of this case, as reflected in the record, the offensive touch and attempted kiss did not cause defendant to fear the victim but instead provoked anger in the defendant.  

Defendant relies on 
People v. Garcia
, 169 Ill. App. 3d 618, 620, 523 N.E.2d 992 (1988), where the court found that the trial court erred when it refused to tender a self-defense forcible felony instruction. In 
Garcia
, 
both the defendant and his brother testified that the victim and others physically struck them on a public way. The court found sufficient evidence to support defendant's theory that he was defending himself against an aggravated battery. 
Garcia
, 169 Ill. App. 3d at 621. 

In this case, defendant did not testify.  We are mindful that support for a defense-tendered instruction may originate from either side and from any source.  
People v. McCarroll
, 168 Ill. App. 3d 1020, 533 N.E.2d 150 (1988).   However, the record, including the witnesses and the defendant's statements, fails to provide the evidence for defendant's theory that he killed Kenneth Posey because he reasonably believed such force was necessary to prevent criminal sexual assault.  The record contained no evidence that defendant feared being sexually assaulted or feared for his safety.  The record contained no evidence of conduct by the victim that could be characterized as sexual assault.  Moreover, the physical evidence confirmed that defendant stabbed the victim multiple times, dragged the victim's body and took the victim's property.   Therefore, based on the totality of the facts and circumstances, the trial court did not abuse its discretion by refusing to give the jury the prevention-of-forcible-felony instruction because there was no foundation in the evidence for this defense theory.  The evidence does not support a prevention-

of-forcible-felony instruction.

 Even if the trial court erred in failing to instruct the jury on defendant's theory of justifiable use of deadly force to prevent a forcible felony, any error was harmless. A trial court's failure to instruct the jury on a self-defense theory based on prevention of a forcible felony may be harmless if the trial court instructed the jury on similar defense theories. 
People v. Wilburn
, 263 Ill. App. 3d 170, 635 N.E.2d 877 (1994); 
People v. Flores
, 282 Ill. App. 3d 861, 668 N.E.2d 1171 (1996).

 In 
Wilburn
 and 
Flores
, the defendants were
 convicted of second degree murder and first degree murder, respectively.  
Wilburn
, 263 Ill. App. 3d at 171; 
Flores
, 282 Ill. App. 3d at 862.  Wilburn and Flores each asked for a prevention-of-forcible-felony instruction on the justifiable use of deadly force to prevent an aggravated battery.  
Wilburn
, 263 Ill. App. 3d at 176; 
Flores
, 282 Ill. App. 3d at 865-66.  The trial courts denied the instruction in both cases, but instructed the juries on the justifiable use of deadly force to prevent imminent death or great bodily harm.  
Wilburn
, 263 Ill. App. 3d at 176-77; 
Flores
, 282 Ill. App. 3d at 865-66.  The appellate court determined the alleged aggravated battery in both cases required a level of force likely to cause death or great bodily harm.  
Wilburn
, 263 Ill. App. 3d at 177-78; 
Flores
, 282 Ill. App. 3d at 866.  The court reasoned that in determining whether Wilburn and Flores reasonably used deadly force to prevent imminent death or great bodily harm, the respective juries necessarily considered whether Wilburn and Flores reasonably used deadly force to prevent the commission of an aggravated battery upon themselves.  
Wilburn
, 263 Ill. App. 3d at 178;  
Flores
, 282 Ill. App. 3d at 866.  Thus, because both Wilburn and Flores received their respective jury's informed consideration of their theory of self-defense, any error in the trial courts' instructions was rendered harmless. 
Wilburn
, 263 Ill. App. 3d at 178; 
Flores
, 282 Ill. App. 3d at 866.

This case is similar to 
Flores
 and 
Wilburn
.  In this case, we find that, taking the instructions as a whole, defendant Jackson received the jury's informed consideration of his theory of defense and any error was harmless.  Like the courts in 
Flores
 and 
Wilburn
, the court here rejected the defense request for a prevention-of- forcible-felony instruction, but it instructed the jury on a self-

defense theory based on the justifiable use of deadly force to prevent imminent death or great bodily harm. In closing arguments, defense counsel argued that defendant was justified in using force against the victim because of the victim's sexual advances.  Therefore, the jury had ample opportunity to consider defendant's theory of defense.  
When the jury rejected defendant's self-defense claim, the jury considered the same evidence necessary to determine if defendant acted reasonably in defending himself against an act of criminal sexual assault. 
Flores
, 282 Ill. App. 3d at 866.  Thus, because the jury was instructed on the theory of defense based on the justifiable use of deadly force and sufficiently considered defendant's self-defense theory, any error was harmless. 
Wilburn
, 263 Ill. App. 3d at 178.

 Next, defendant argues the trial court erred when it denied his tendered instruction on second degree murder based on serious provocation. It should be noted however, that the jury did receive a second degree murder instruction based on defendant's unreasonable belief that the circumstances warranted his use of deadly force.  720 ILCS 5/9-2(b) (West 1996). Defendant was entitled to the serious provocation instruction only if some evidence of serious provocation existed in the record which, if believed by the jury, would reduce the crime to second degree murder.  
People v. Delgado
, 282 Ill. App. 3d 851, 857, 668 N.E.2d 173 (1996).

The second degree murder statute states in pertinent part:

  "(a) A person commits the offense of second degree murder when he commits the offense of first degree murder *** and ***

  (1) At the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed ***

  ***

  (b) Serious provocation is conduct sufficient to excite an intense passion in a reasonable person."  720 ILCS 5/9-2 (West 1994). 

The only categories of provocation that courts recognize as sufficient to warrant a second degree murder instruction are mutual quarrel or combat, substantial physical injury or assault, illegal arrest, or adultery with one's spouse. 
 
People v. Tenner
, 157 Ill. 2d 341, 371-72, 626 N.E.2d 138 (1993). 
Mutual combat is defined as "a fight or struggle entered into by both parties willingly or by a mutual fight upon a sudden quarrel and in hot blood upon equal terms where death results from the combat." 
People v. Rivera
, 255 Ill. App. 3d 1015, 1026, 627 N.E.2d 294 (1993).  The confrontation must be mutual and the evidence must indicate that both the accused and the victim willingly participated in a fight. 
Delgado
, 282 Ill. App. 3d at 858. 
In addition, the evidence will not support a mutual provocation instruction where there is provocation but the defendant's retaliation to the provocation is not proportional and involves a deadly weapon.  
People v. Austin
, 133 Ill. 2d 118, 127, 549 N.E.2d 331 (1989).

Defendant contends he struggled against Posey to prevent Posey from sexually assaulting him.  However, defendant was not entitled to a mutual combat instruction because he instigated the combat and was the sole participant. The victim's attempted kiss and offensive touching  did not constitute combat. 
Moreover, defendant retaliated with substantial force. He punched the victim in the face three times.  The victim responded by grabbing the defendant.  The defendant broke away from the victim, grabbed a knife and stabbed the unarmed victim once in the chest and twice in the left thigh. Defendant's retaliation was not proportional and he introduced a deadly weapon into the situation.  Defendant himself said that Kenneth never had any weapons and never hurt the defendant.  The nature of the contact characterized by the defendant arming himself with a knife while the victim remained unarmed could hardly meet the definition of mutual combat, which envisions a fight or struggle on equal terms.  
People v. Mackey
, 207 Ill. App. 3d 839, 865, 566 N.E.2d 449 (1990).  Under the facts of this case, no provocation instruction is warranted and the court did not abuse its discretion by rejecting that instruction. 
Rivera
, 255 Ill. App. 3d at 1026. 

Moreover, it should be noted that the jury did receive a second degree murder instruction. The trial court instructed the jury on second degree murder based on defendant's unreasonable belief that the circumstances warranted his use of deadly force. 720 ILCS 5/9-2(2) (West 1996). The jury, after hearing all the evidence and deliberating, rejected this theory and found defendant guilty of first degree murder. The State's evidence overwhelmingly supported the jury's verdict and thus any purported instruction error was harmless. 
People v. Moore
, 229 Ill. App. 3d 66, 75, 593 N.E.2d 771 (1992).

Next, defendant contends the trial court erred by admitting evidence of Posey's peaceful character. Defendant waived this issue by failing to specifically raise it in his posttrial motions.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).  Nor do we find any plain error, as the evidence was not closely balanced and the alleged error was not of such magnitude that it deprived defendant of a fair trial.  See 
People v. Alvine
, 173 Ill. 2d 273, 297, 671 N.E.2d 713 (1996).  We therefore decline to address the issue on the merits. 

Defendant further argues the trial court erred by admitting testimony of an evidence technician, Robert Jacobsen, who indicated that defendant's fingerprints were on file with a computer database.  Defendant contends such testimony improperly implied defendant's involvement in other crimes.  After Jacobsen testified, the defendant moved for a mistrial which the trial court denied. 

A law enforcement officer's isolated and ambiguous statement that he obtained defendant's fingerprints from a state agency's database does not by itself indicate that defendant has a criminal background. 
People v. Hopkins
 229 Ill. App. 3d 665, 676, 593 N.E.2d 1028 (1992). In 
Hopkins
, 
the court found no error from testimony that defendant's fingerprints were on file with a neighboring county. The court noted that jurors, through their collective knowledge, are aware that government employees are often fingerprinted and, thus, rejected defendant's speculative claim that the jury would infer from this information that defendant had a criminal background. 
Hopkins
, 229 Ill. App. 3d at 676.  

In 
People v. Prewitt
, 
160 Ill. App. 3d 942, 948-49, 513 N.E.2d 977 (1987), the court held that a reference to a defendant's "IR number" while discussing the source of defendant's fingerprints did not constitute reversible error. The court noted that during the trial there was only one reference to the "IR" number, an ambiguous term, and that the prosecutor never stated that defendant had prior arrests or convictions. 
Prewitt
, 160 Ill. App. 3d at 949.

In this case, Jacobsen's isolated reference to the computer database source of defendant's fingerprints did not constitute error. Jacobsen testified that he obtained defendant's fingerprints from the Automated Fingerprint Identification System (AFIS), a computer database, that uses the state's crime lab. Jacobsen further stated the AFIS database contains fingerprints of every individual arrested, police officers, and government employees. Jacobsen made no other reference to the source of defendant's fingerprints. Moreover, the prosecution never stated that defendant had prior arrests or convictions. The trial court noted that because of the ambiguity of Jacobsen's testimony, the jury could believe that defendant was a former government employee. Thus, to infer from Jacobsen's testimony that defendant had a history of criminal arrests or convictions is pure speculation.

The cases that defendant cites do not persuade us. See 
People v. Pitts
, 1 Ill. App. 3d 120, 122, 273 N.E.2d 664 (1971)(police officer testified defendant stated he was on parole); 
People v. Hudson
, 7 Ill. App. 3d 333, 337, 287 N.E.2d 297 (1972) (defendant's mug shot shown to the jury); 
People v. Robinson
, 189 Ill. App. 3d 323, 334-35, 545 N.E.2d 268 (1989)(testimony and repeated references to defendant's prior bad act). In those cases, the prosecution made a specific reference to prior conduct of the defendant from which the jury could directly conclude that defendant had a criminal history or prior relationship with law enforcement.

Jacobsen's testimony, however, only generally referred to a central database source of fingerprints and did not specifically discuss defendant or the source of defendant's fingerprints. Moreover, the prosecution never stated that defendant had prior arrests or convictions and made no specific reference to prior conduct indicating a criminal history or prior relationship with law enforcement. Therefore, the trial court did not err in denying defendant's motion for a mistrial. 

Next, defendant argues the trial court erred by allowing the State to present evidence of uncharged crimes, in that, following the killing, defendant stole Posey's car, wrist watch, and ring and sold or loaned those items for cash. 

It is well established that evidence of other offenses is not admissible to show defendant's disposition or propensity to commit crime.  
People v. Coleman
, 158 Ill. 2d 319, 333, 633 N.E.2d 654 (1994).  However, such evidence is admissible if relevant for any other purpose, such as 
modus operandi
, proof of motive, intent, identification, or absence of mistake.  
Coleman
, 158 Ill. 2d at 333. For instance, evidence that an offender attempted to sell property recently stolen from another is relevant to prove that the offender intended to commit the prior robbery
 or burglary. 
People v. Garrison
, 146 Ill. App. 3d 592, 593-94, 496 N.E.2d 535 (1986). Furthermore, "[e]vidence of other crimes can be admissible if it is intertwined with the instant offense or where it relates to the events which occurred earlier in the evening which led to the charged offense." 
People v. Lewis
, 
243 Ill. App. 3d 618, 625-26, 611 N.E.2d 1334 (1993). 

In the present case, Bernard Estes testified that on October 29, 1994, just a few hours after the murder, his friend rented the victim's car from defendant. Estes also at that time bought a ring and bracelet from the defendant. Therefore, evidence that defendant took Posey's property and either loaned or sold it to others rebuts defendant's argument that he merely acted in self-defense when he stabbed Posey to death. Moreover, defendant's possession of the victim's property near the time of the murder established defendant's identity as the offender, proved his intent to commit armed robbery on Posey, and corroborated the details within defendant's confessions. Additionally, defendant's actions were within a few hours of the murder.  He stabbed the victim, took the victim's property, fled the scene in the victim's car, and sold or loaned the victim's property for cash within two or three hours of the stabbing.  These actions constituted a continuing and related course of criminal conduct.  Accordingly, the trial court did not abuse its discretion in admitting evidence that defendant stole and sold the victim's property.  

Defendant's final contention is that the trial court erred in sentencing him to natural life in prison for killing Posey during the commission of a felony because there was insufficient evidence that he killed Posey during the commission of an armed robbery.

At defendant's sentencing hearing, the State sought a death sentence based on the aggravating factor that defendant committed murder during the course of the forcible felony of armed robbery. 

A defendant is eligible for a sentence of death or natural life in prison if the defendant commits a murder in the course of a felony. 720 ILCS 5/9-1(a)(6) (West 1996). The Criminal Code further lists armed robbery as a predicate felony for a sentence of death or natural life.  720 ILCS 5/9-1(a)(6)(c) (West 1996). A trial court's determination that a defendant is eligible for a sentence of natural life will not be disturbed unless "the evidence is so unreasonable, improbable or unsatisfactory that it does not provide proof of the findings beyond a reasonable doubt." 
People v. Gaines
, 235 Ill. App. 3d 239, 250, 601 N.E.2d 949 (1992).

When a defendant's sentence is based on a murder committed during the course of an armed robbery, the State need not prove that the victim was alive at the time of the robbery, but only that the two crimes occurred during one criminal episode. 
People v. Nitz
, 143 Ill. 2d 82, 126, 572 N.E.2d 895 (1991). In 
Nitz
, the supreme court rejected defendant's argument that he was not eligible for the death penalty because the defendant killed the victim prior to the acts of robbery. 
Nitz
, 
143 Ill. 2d at 126.  The court stated that "it is not necessary for the State to prove that these items were removed from the victim's possession before the fatal shot was fired in order to prove the murder was committed in the course of a [felony]." 
Nitz
, 143 Ill. 2d at 126.

In the case at bar, the jury found defendant guilty of murder, felony murder, and armed robbery for acts committed during the course of one criminal episode. The State proved beyond a reasonable doubt that immediately after stabbing the victim multiple times with a knife, the defendant took the victim's watch, ring, bracelet and car.  Within two to three hours of the stabbing, the defendant sold or loaned the victim's property for cash. Therefore, the State proved beyond a reasonable doubt that defendant committed the offenses of murder and armed robbery during one criminal episode. The trial court properly found that defendant was eligible for a sentence of natural life imprisonment.

Accordingly, for all of the foregoing reasons, we affirm the defendant's convictions for armed robbery, first degree murder and felony murder and we affirm defendant's sentence for first degree murder and armed robbery. 

Affirmed.

TULLY, J., concurs.

PRESIDING JUSTICE O'BRIEN, specially concurring in part and dissenting in part:

I respectfully dissent from the majority's affirmance of defendant’s convictions for intentional murder  (720 ILCS 5/9-

1(a)(1)(West 1994)) and knowing murder (720 ILCS 5/9-1(a)(2)(West 1994)).  In all other matters, I concur.

Section 7-1 of the Criminal Code of 1961 (720 ILCS 5/7-1 (West 1994)) provides that a person is justified in the use of deadly force if he reasonably believes such force was necessary to prevent the commission of a forcible felony.  The definition of "forcible felony" includes criminal sexual assault.  720 ILCS 5/2-8 (West 1994).  Criminal sexual assault is defined as "an act of sexual penetration by the use of force or threat of force."  720 ILCS 5/12-13(a)(1) (West 1994).

A criminal defendant is entitled to have the jury instructed on any legally recognized defense theory that has some foundation in the evidence, however tenuous.  
People v. Yarbrough
, 269 Ill. App. 3d 96, 100 (1994).  Thus, the issue here is whether some evidence exists supporting defendant's theory that he killed Kenneth Posey because he reasonably believed such force was necessary to prevent Posey from sexually assaulting him.  

There were no eyewitnesses to the crime; the only direct evidence of what actually occurred comes from defendant's admission to Detective Disotaur.  Defendant told Disotaur that Posey picked him up at North Avenue and Austin Boulevard and drove him to Posey's home.  Defendant suspected Posey was a homosexual.  Although defendant hated homosexuals, he went with Posey because he thought he could get "something" from him.  Three or four other men were at the house when defendant and Posey arrived; defendant suspected they were homosexuals, too.  After the other men left, Posey invited defendant upstairs.  Immediately preceding the killing, Posey touched defendant on the pants in the area of the penis, thereby signalling a sexual interest in defendant.  Defendant told Posey "not to do that."  Instead of taking defendant's no for an answer, Posey attempted to kiss defendant on the mouth.  Posey's attempted kiss was a second indication that he was sexually interested in defendant; the attempted kiss also demonstrated Posey's unwillingness to comply with defendant's request that he stop acting in a sexual manner toward him.  

In response to the unwanted kiss, defendant punched Posey three times in the face, turned around, and started to walk toward the kitchen.  Posey immediately came up behind defendant and put his hands around defendant's throat.  At this point, defendant knew that Posey had made two unwanted sexual passes at him, that Posey had refused to stop when defendant told him "no," and that Posey was now coming at defendant a third time even after defendant had punched him.  Defendant knew that Posey was the bigger man, 6 feet 2 inches tall as compared to 5 feet 8 inches tall, and that Posey had his hands on defendant's neck in an act of force.  Under these facts, defendant reasonably could have believed deadly force was necessary to prevent a criminal sexual assault.  

A jury might disbelieve defendant's story and/or determine that defendant's killing of Posey was motivated by something other than a fear of criminal sexual assault.  Nonetheless, since some evidence existed supporting defendant's theory of defense, the trial court abused its discretion by refusing to instruct the jury on the justifiable use of deadly force to prevent a criminal sexual assault.  See 
People v. Jefferson
, 257 Ill. App. 3d 258, 265 (1993)(defendant is entitled to a jury instruction on 
any
 defense that the evidence supports, even if the evidence is slight.)

The majority states that any error in failing to give the instruction was harmless because the trial judge instructed the jury that a person is justified in the use of deadly force if he reasonably believed such force was necessary to prevent imminent death or great bodily harm to himself.  I disagree.  Here, the defendant presented separate theories such that the jury could separately consider whether defendant acted to prevent his imminent death or great bodily harm and/or whether defendant acted to prevent the commission of a criminal sexual assault upon him.   

However, this jury instruction error relates only to the intentional murder and knowing murder counts.  Defendant's conviction for felony murder is not vitiated as felony murder is premised on 
strict
 
liability
 for a killing during the commission of a forcible felony.  
People v. Hall
, 291 Ill. App. 3d 411, 420 (1997).  The trial judge sentenced defendant to natural life in prison for first degree murder for the intentional murder conviction (720 ILCS 5/9-1(a)(1)(West 1994)) but imposed no sentence on the felony murder (720 ILCS 5/9-1(a)(3)(West 1994)) or knowing murder (720 ILCS 5/9-1(a)(2)(West 1994)) convictions.  I would remand for a new sentencing hearing on the felony murder conviction.

In all other respects, I concur.