FIRST DIVISION

March 29, 2002

No. 1-99-4099

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

v. ) )

KEVIN PHELPS, ) Honorable

) Mary Maxwell Thomas,

Defendant-Appellant. ) Judge Presiding

JUSTICE McNULTY delivered the opinion of the court:

A jury found defendant, Kevin Phelps, guilty of aggravated kidnaping and heinous battery.  The trial court imposed consecutive sentences for the offenses.  When this case first came before us, we affirmed the convictions and sentences, but modified the sentences to run concurrently.  Our supreme court vacated our opinion and instructed us to reconsider the decision in light of 
People v. Carney
, 196 Ill. 2d 518, 752 N.E.2d 1137 (2001), and 
People v. Wagener
, 196 Ill. 2d 269, 752 N.E.2d 430 (2001).  We substitute this opinion for the vacated opinion.

Defendant challenges both the convictions and the sentences on appeal.  Against the convictions, he argues that the prosecution failed to prove he secretly confined the victim and the prosecutor's closing argument misstated the evidence.  Against the sentences he argues that the court improperly doubly enhanced his sentences and misapplied consecutive sentencing to his sentences.  We again affirm the convictions and sentences and modify the sentences to run concurrently.

P.H., a high school student, befriended defendant, a paraplegic, late in 1996.  She knew defendant by his nickname, Sniper, and he called her by a nickname few people knew.  Through most of the summer of 1997, P.H. went to visit defendant about every other day.  In August, 1997 P.H.'s older sister and legal guardian grounded her, instructing her not to see defendant.

P.H. left the high school after 4 p.m. on September 4, 1997.  She returned home around 8 p.m., screaming "Sniper burnt me."  P.H.'s sister called for an ambulance.  Doctors at the hospital found that P.H. had suffered second and third degree burns over 36% of her body.  She remained in the intensive care unit for two weeks, undergoing multiple skin grafts and other treatments to help her skin heal.  She has prominent, permanent scars.  Police arrested defendant and charged him with heinous battery, aggravated kidnaping and attempted murder.

At trial P.H. testified that when she left the high school on September 4, 1997, two men called to her, using the nickname defendant and few others used.  One man said, "Folks said come get your stuff."  P.H. knew the man meant defendant, because his home was the only place she had left anything.  She told the men she would get the stuff later, and she caught a city bus to go home.  When she got off the bus, the men drove up behind her.  One pulled her jacket and told her to get in the car.  They took her to defendant's home.

Defendant asked P.H. where she had been, what she had been doing, and whom she had been seeing for the prior weeks.  She explained that her sister had grounded her.  He asked the same few questions repeatedly for an hour.

Defendant then told P.H. to take off her clothes.  When she refused he pulled out a gun and told her again to take off her clothes.  She took them off.  He threw a cup full of liquid on her, and he threw a lit cigarette lighter at her.  The skin of her abdomen and legs immediately went up in flames.  P.H. ran to the bathroom and put out the fire, but she had no way to leave the house without passing defendant again.  She talked with him for more than an hour before finally persuading him to let her dress and leave.  She agreed to tell her sisters a stranger abducted her, raped her and burned her.

On cross-examination P.H. admitted that defendant never said she could not leave.  Some time before he burned her, he asked her to get him a glass of water.  When she went to the kitchen, she was out of his sight, but she made no attempt to flee.  She explained that from defendant's tone and his reputation she understood that she would put herself in peril if she left.

In closing the prosecutor argued, without objection, that the men who met P.H. said "Sniper[] wants to see you."  The prosecutor later added:

"[Defendant] told her she couldn't leave.

*** He says, 'You can't leave.  Remove your clothes.'

She could not leave at that point."

Defense counsel in closing reminded the jurors of P.H.'s testimony that defendant never said she could not leave.

The jury acquitted defendant on the charge of attempted murder, but found him guilty on the charges of heinous battery and aggravated kidnaping.  The trial court sentenced defendant to 30 years in prison for heinous battery and 15 years in prison for aggravated kidnaping.  The court also found that the two crimes occurred in a single course of conduct with no substantial change in the criminal objective, and therefore section 5-8-4(a) of the Unified Code of Corrections mandated consecutive sentences for the charges.  730 ILCS 5/5-8-4(a) (West 1996).

On appeal defendant argues first that the prosecution failed to prove him guilty of kidnaping.  The prosecutor argued that defendant committed the crime when he pulled out a gun and told P.H. to undress.  At that point, defendant secretly confined P.H., within the meaning of the statutory definition of kidnaping, against her will.

To establish secret confinement under section 10-1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/10-1(a)(1) (West 1996)), the prosecution must show a confinement, usually in an enclosure like a house or a car (
People v. Lloyd
, 277 Ill. App. 3d 154, 163, 660 N.E.2d 43 (1995)), concealed from the knowledge of persons who would be affected by the act (
People v. Turner
, 282 Ill. App. 3d 770, 780, 668 N.E.2d 1058 (1996)).  The secrecy of either the place of confinement or of the fact that a person is confined suffices for the secrecy element of kidnaping.  
People v. Sykes
, 161 Ill. App. 3d 623, 628, 515 N.E.2d 253 (1987).

In 
People v. Enoch
, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988), the defendant entered the victim's office at work, and several of the victim's coworkers saw her go with defendant to the victim's apartment.  In the apartment the defendant bound the victim to a chair and did not answer the door or the telephone when people tried to contact the victim.  Our supreme court affirmed the conviction for aggravated kidnaping, holding that the evidence showed that no one knew the defendant had confined the victim in her apartment.  
Enoch
, 122 Ill. 2d at 195-96; see also 
People v. Mulcahey
, 72 Ill. 2d 282, 285, 381 N.E.2d 254 (1978).

Here, defendant confined P.H. when he drew a gun and ordered P.H. to undress.  She could not then leave the enclosure of defendant's home.  No one knew of the confinement.  In particular, P.H.'s guardian, who would be most directly affected, did not know defendant was keeping P.H. in his home against her will.  The crime became aggravated kidnaping when he burned her, inflicting great bodily harm, during her secret confinement.  See 720 ILCS 5/10-2(a)(3)(West 1996).  The prosecution presented sufficient evidence to support the conviction for aggravated kidnaping.

Next, defendant contends that the prosecutor made two misrepresentations in closing arguments, and those statements deprived him of a fundamentally fair trial.  Because defense counsel did not object to the statements, we limit our review to a determination of whether plain error occurred.  See 
People v. Turner
, 282 Ill. App. 3d 770, 781, 668 N.E.2d 1058 (1996).

Defense counsel, in cross-examining P.H., elicited her admission that defendant never said she could not leave his home.  The prosecution argued that by drawing a gun and telling P.H. to undress, defendant effectively told her she could not leave.  In response, defense counsel reminded the jurors that defendant never actually said P.H. could not leave.  We see no basis for concluding that the prosecutor's argument seriously misled the jurors.  See 
People v. Edgeston
, 157 Ill. 2d 201, 219-20, 623 N.E.2d 329 (1993).

P.H. testified that a man outside of the school said "Folks" wanted her to get her stuff.  She knew that the man meant defendant wanted her to come over.  The prosecutor recounted the testimony as evidence that the man said "Sniper[] wants to see you."  Again, the paraphrase did not seriously prejudice defendant.  See 
People v. Williams
, 181 Ill. 2d 297, 330, 692 N.E.2d 1109 (1998).  We find no plain error.

Defendant raises several issues concerning his sentencing.  He concedes that the prosecution presented sufficient evidence of a battery, with the class of offense increased to heinous battery because defendant caused severe and permanent disfigurement by means of a flammable substance.  720 ILCS 5/12-4.1(a)(West 1996).  While battery is a Class A misdemeanor, heinous battery is a Class X felony.  720 ILCS 12-3(b), 12-4.1(b) (West 1996).  The prosecution also proved a kidnaping, increased to aggravated kidnaping because defendant inflicted great bodily harm on P.H.  720 ILCS 5/10-2(a)(3)(West 1996).  Kidnaping is a Class 2 felony, but aggravated kidnaping is a Class X felony.  720 ILCS 5/10-1(c), 5/10-2(b)(West 1996).  Defendant argues that the use of closely related factors to increase the level of both crimes constitutes improper double enhancement.

"[T]he legislature has the power to codify provisions which enhance a criminal offense (
e.g.
, misdemeanor to a felony) or enhance the applicable range of punishment (
e.g.
, extended term sentence or Class X sentencing).  This is known as 'single enhancement.'   Double enhancement occurs when a factor already used to enhance an offense or penalty is reused to subject a defendant to a further enhanced offense or penalty.  For example, the same factor has been used to double enhance an offense (
People v. Haron
, 85 Ill. 2d 261[, 422 N.E.2d 627] (1981) (offense enhanced from misdemeanor battery to felony aggravated battery and from aggravated battery to Class X felony armed violence based on use of a deadly weapon)), a punishment (
Fitzsimmons v. Norgle
, 104 Ill. 2d 369[, 472 N.E.2d 802] (1984) (defendant transferred from juvenile to adult criminal court and probation precluded as potential punishment based on same prior conviction)), or some combination of the two (
People v. Hobbs
, 86 Ill. 2d 242[, 427 N.E.2d 558] (1981) (misdemeanor theft enhanced to a felony theft and extended term sentence imposed based on same prior conviction))."  
People v. Thomas
, 171 Ill. 2d 207, 223-24, 664 N.E.2d 76 (1996).

No case or rule forbids multiple uses of single enhancement factors to increase the levels of separate crimes.  The legislature decided that batteries involving permanent disfigurement by means of flammable substances, and kidnapings involving great bodily harm, deserve punishments in the range for Class X felonies.  The prosecution proved defendant guilty of all elements of both crimes.  We find no double enhancement in the use of similar factors in the aggravation of both crimes.  Defendant offers no further challenge to the sentences for each individual offense, so we affirm the sentences.

But defendant argues that the trial court misapplied section 5-8-4 of the Unified Code of Corrections (730 ILCS 5/5-8-4 (West 1996)) to his sentences. That section provides:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury *** in which event the court shall enter sentences to run consecutively."  730 ILCS 5/5-8-4(a) (West 1996).

Because the trial court correctly found that the two offenses occurred in a single course of conduct, the section forbids consecutive sentences unless an exception applies.  
People v. Wittenmyer
, 151 Ill. 2d 175, 195, 601 N.E.2d 735 (1992).

The courts presume that when the legislature established the range of penalties for an offense, it took into account all of the factors inherent in the offense.  
People v. Ferguson
, 132 Ill. 2d 86, 97, 547 N.E.2d 429 (1989).  While the legislature has the power to authorize further punishment based on an element inherent in the offense, the legislature must express the intention do so clearly and unambiguously.  
People v. Rissley
, 165 Ill. 2d 364, 390-91, 651 N.E.2d 133 (1995); 
Ferguson
, 132 Ill. 2d at 97.

Severe bodily injury is an element of both the aggravated kidnaping and the heinous battery charges here.  We must presume that the legislature took this element into account when it established the range of penalties for the two crimes.  We must not interpret any statute as authorizing a further increase in the punishment imposed on an offender on the basis of that element, unless the legislature clearly and unambiguously expressed such an intention.  
Ferguson
, 132 Ill. 2d at 97.  Our supreme court observed in 
Carney
, 196 Ill. 2d at 531, that the imposition of consecutive sentences increases an offender's punishment.  The question, then, is whether the exception in section 5-8-4(a) clearly and unambiguously applies to Class X and Class 1 crimes that include severe bodily harm as an element of the offense.

In our vacated opinion we found the statute not sufficiently clear and unambiguous to overcome the presumption set forth in 
Ferguson
.  We explained our understanding of the statute: the statute mandates consecutive sentences if the defendant is convicted of two or more crimes committed in a single course of conduct, including any Class X or Class 1 felony that does not include great bodily harm as an element of the crime, and the defendant caused great bodily harm in the course of committing that Class X or Class 1 felony.  Thus, if a defendant committed an aggravated kidnaping of a profoundly retarded person, and he inflicted great bodily harm during the secret confinement, the sentence for aggravated kidnaping would run consecutively to the sentence for any other offense the defendant committed in the same course of conduct.  See 720 ILCS 5/10-2(a)(2), 10-2(b)(West 2000).  Attempted murder, another Class X felony that need not involve bodily harm (720 ILCS 5/8-4(a), (c)(1) (West 2000)), and armed robbery and residential burglary, Class 1 felonies that need not involve bodily harm (720 ILCS 5/18-5(a), (b), 19-3(a), (b)(West 2000)), similarly require consecutive sentencing.  If the defendant causes great bodily harm in the course of an attempted murder, armed robbery or residential burglary, and he commits another crime in the same course of conduct, section 5-8-4 directs that the sentence imposed for the Class X or Class 1 felony must be served consecutively to the sentence imposed for the other crime.  Since the act causing severe bodily injury will almost always count as a separate crime, like aggravated battery, the sentence for the Class X or Class 1 felony will be consecutive to the sentence for the crime that included severe bodily injury as an element.

In 
Carney
, 196 Ill. 2d at 527-35, and 
Wagener
, 196 Ill. 2d at 282-88, our supreme court held that consecutive sentences do not expose a defendant to punishment exceeding the statutory maximum for each conviction, and therefore consecutive sentences do not implicate the due process problem presented by the sentence in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). 

After 
Carney
 and 
Wagener
, 
Ferguson
 appears to remain good law.  Statutory law still limits the court's authority to impose punishments, including consecutive sentences, and in interpreting punitive statutes, the courts should not reuse the elements of the crimes as grounds for increasing punishments imposed on offenders unless the legislature has clearly and unambiguously directed the courts so to reuse those elements.  Neither 
Carney
 nor 
Wagener
 purports to hold or explain how section 5-8-4 shows a clear and unambiguous intention to apply to crimes where severe bodily harm is an element of the Class X or Class 1 crime, and not a factor in addition to the Class X or Class 1 crime.  Accordingly, we find in 
Carney
 and 
Wagener
 no reason to alter our initial judgment.

We note that in 
People v. Sample
, 326 Ill. App. 3d 914, 761 N.E.2d 1199 (2001), and 
People v. Carney
, No. 1-98-4677 (January 31, 2002) (
Carney II
), the courts relied on relied on a different decision of our supreme court, 
People v. Whitney
, 188 Ill. 2d 91, 720 N.E.2d 225 (1999), for interpreting section 5-8-4 in somewhat similar circumstances. In 
Whitney
 the trial court found the defendant guilty of the first degree murder of one person and aggravated discharge of a firearm in the direction of a second person.  The second person suffered no physical injury.  The trial court sentenced the defendant to consecutive sentences of 50 years in prison for murder and 15 years in prison for aggravated discharge of a firearm.  The defendant argued on appeal that section 5-8-4 did not permit consecutive sentencing because the victim of the Class 1 felony suffered no bodily injury.  Our supreme court agreed with the defendant, holding that section 5-8-4 does not permit consecutive sentencing for two offenses committed in a single course of conduct, unless one is a Class X or Class 1 felony and the defendant inflicted severe bodily injury during the commission of that felony.  Because in 
Whitney
 the defendant did not inflict any injury in the commission of the triggering offense, aggravated discharge of a firearm, section 5-8-4 did not permit consecutive sentencing.

The prosecution argued that the court's interpretation of section 5-8-4 "leads to an absurd result because only those Class X or Class 1 felonies in which severe bodily injury is an inherent factor will qualify as triggering offenses."  
Whitney
, 188 Ill. 2d at 99.  The defense in that case had no reason to oppose the assertion that the section applied where severe bodily injury is an element of the triggering offense, as the case did not involve such facts.  The court rejected the prosecution's assertion:

"First, we disagree that only Class X or Class 1 felonies where severe bodily injury is an inherent factor trigger consecutive sentences under section 5-8-4(a). Instead, any Class X or Class 1 felony that results in severe bodily injury being inflicted on the victim of that felony triggers consecutive sentences."  
Whitney
, 188 Ill. 2d at 99.

The court did not confront and did not resolve an argument that the section applies only to Class 1 and Class X crimes where the offender inflicts severe bodily injury in addition to commission of the Class X or Class 1 offense.  Our supreme court did not instruct us to reconsider our opinion in light of 
Whitney
, apparently recognizing that 
Whitney
 has no bearing on the issues in this case. 

But the appellate court, in 
Sample
 and 
Carney II
, latched onto the sentences quoted above as proof that section 5-8-4(a) requires consecutive sentencing where severe bodily injury is an element of the triggering Class X or Class 1 offense.  We do not see how these sentences in a supreme court opinion disposing of an unrelated argument can substitute for the clear and unambiguous expression of legislative intent required by 
Ferguson
.  
Whitney
 did not purport to reverse or restrict 
Ferguson
, and it does not attempt to explain how section 5-8-4(a) clearly and unambiguously expresses the intention to apply to Class X and Class 1 felonies where severe bodily injury is an element of the offense, so that the offender did not inflict severe bodily injury additional to commission of the Class X or Class 1 felony.

Whitney
 even applies principles similar to those undergirding 
Ferguson
.  The court in 
Whitney
 found section 5-8-4(a) subject to two reasonable interpretations pertinent to the question before the court.  The court said:

"As noted by the State, there is no specific reference tying the requirement of severe bodily injury to the Class X or Class 1 felony. Nonetheless, it is reasonable to associate the severe bodily injury with the Class X or Class 1 felony given its inclusion in the same exception. Accordingly, the plain language does not clearly reveal the legislative intent. ***  In light of the ambiguous nature of the first exception under section 5-8-4(a) ***, we must interpret section 5-8-4(a) in favor of the defendant."  
Whitney
, 188 Ill. 2d at 98.

Similarly the court in 
Ferguson
 held that we must not interpret statutes regarding punishment to apply to increase a defendant's punishment based on a factor already considered in sentencing, as an element of the offense, unless the legislature clearly and unambiguously expressed an intention so to reuse the element of the offense.

We find the exception in section 5-8-4(a) ambiguous: it might apply only to Class X or Class 1 felonies where severe bodily injury is a factor in addition to the proof necessary to show the Class X or Class 1 felony, or it might apply to any Class X or Class 1 felony that involves severe bodily injury, even if it is an element of the offense.  Nothing in the statute, even in 
Whitney
's interpretation of the statute, clarifies legislative intent on the issue.  Under the principles of 
Whitney
 and, especially, 
Ferguson
, the statute is not sufficiently clear and unambiguous to permit imposition of increased punishment on the basis of an element of the offenses.

Section 5-8-4(a), then, requires consecutive sentencing if the defendant causes severe bodily injury in the course of committing a Class X or Class 1 felony like armed robbery, residential burglary, attempted murder, home invasion and aggravated discharge of a firearm, all of which do not include severe bodily injury as an element of the offense.  The results in both 
Carney II
 and 
Sample
 accord with our interpretation of section 5-8-4(a), as those cases involved severe bodily injury inflicted in the course of armed robbery and home invasion.

Under 
Wagener
 and 
Carney
 the imposition of consecutive sentences increases punishment without increasing either individual sentence, and therefore the due process concerns raised in 
Apprendi
 do not apply to consecutive sentencing.  But the legislature establishes standards applicable to all punishments, and not merely for individual sentences.  The decision in 
Ferguson
 restates principles for interpreting all punitive provisions, including section 5-8-4.  Applying those principles, we find that the legislature has not clearly and unambiguously expressed an intention to require consecutive sentences for Class X and Class 1 felonies that include severe bodily injury as an element of the offense.  For such crimes, including the crimes defendant committed here, the legislature established appropriate punishment by setting the range of sentences available for the crimes.  Nothing in 
Carney
 or 
Wagener
 undercuts the authority of 
Ferguson
.  Neither 
Carney
 nor 
Wagener
 makes any pronouncement relevant for interpretation of the intent behind section 5-8-4.

Defendant secretly confined P.H. in his home when he took out a gun and ordered her to undress, because no one knew defendant was holding P.H. against her will.  The prosecutor's statements in argument paraphrasing the testimony did not amount to plain error.  The court correctly found that P.H.'s great bodily harm showed that defendant committed both an aggravated kidnaping and a heinous battery.  But that same bodily harm cannot warrant the imposition of consecutive sentences, because severe bodily injury was a necessary element of both crimes, and the legislature took into account the severe bodily injury caused by heinous battery and aggravated kidnaping when it established the sentencing ranges for those offenses.  Section 5-8-4(a) does not clearly and unambiguously express a legislative intention to increase punishment for persons convicted of Class X or Class 1 felonies without an additional factor of severe bodily harm, where severe bodily injury is an element of the Class X or Class 1 offense.  Therefore we affirm the convictions and modify the sentences to run concurrently.

Affirmed as modified. 

COHEN, P.J. and O'MARA FROSSARD, J., concur.